Robert B. WALL, Appellant,

v.

Linda E. STINSON, f/k/a LINDA E. WALL, Appellee.

No. S–7667.

Supreme Court of Alaska.

July 23, 1999.

Jeri D. Byers, Law Office of Jeri D. Byers, and Albert Maffei, Law Offices of Maffei, Inc., Anchorage, for Appellant.

Diane L. Wendlandt, Assistant Attorney General, Anchorage, and Bruce M. Botelho, Attorney General, Juneau, for Appellee.

Before MATTHEWS, Chief Justice, COMPTON, EASTAUGH, FABE, and BRYNER, Justices.

## OPINION

BRYNER, Justice.

■ We grant full faith and credit to another state's judgment only if the issuing court had jurisdiction over the parties and the subject in controversy. But when jurisdiction has been fully litigated in the issuing court, we must credit that court's jurisdictional decision. Alaskan Robert B. Wall appeared in court in Oregon and contested Oregon's jurisdiction over his person and over the subject matter of his child support action. The court decided that it had jurisdiction and entered a child support judgment

against Wall. Wall abandoned his appeal. He later attacked the Oregon judgment in Alaska on jurisdictional grounds. We hold that Oregon's decision on jurisdiction is binding and bars Wall's attack.

## I. FACTS AND PROCEEDINGS

In December 1980, Robert and Linda Wall (now Linda Stinson) were married in Oregon. Their first child, Robert, was born there in January 1981. In 1982, Wall moved to Alaska, and, the following year, Stinson and Robert joined him. In 1985, the couple had their second child, Randall. Stinson returned temporarily to Oregon for Randall's birth. In 1987, Stinson returned to Oregon permanently, taking the children without Wall's knowledge or consent.

### A. 1988 Oregon Support and Custody Order

Stinson filed for separation in Oregon shortly after arriving. The Oregon court determined that it had jurisdiction to enter a separation order and a temporary order for custody and support. Just after receiving notice of the separation proceedings, Wall filed for divorce in Alaska. Wall argued in the Alaska proceeding that, under the Parental Kidnapping Prevention Act (PKPA),[1] Alaska rather than Oregon had subject matter jurisdiction to decide the child custody issues. The court in Alaska initially disagreed, determining that Oregon had jurisdiction. Wall also participated through counsel in the Oregon proceedings; he repeatedly but unsuccessfully litigated the issues of personal and subject matter jurisdiction. Stinson eventually converted the separation proceeding into a dissolution proceeding. In 1988, the Oregon court dissolved the marriage and awarded Stinson custody and child support. Wall began to prosecute an appeal in Oregon, but later abandoned it.

### B. 1989 Alaska Support and Custody Order

Once Oregon entered its Decree of Unlimited Separation, the Alaska court revisited its determination that Oregon had jurisdiction.

On reconsideration, it determined that Oregon lacked subject matter jurisdiction over the child custody issues. In 1989, it entered its own divorce, property settlement, child custody, and child support decree, awarding custody and support to Wall. Apparently, neither Stinson nor the children participated in the Alaska proceedings.

### C. 1993 Alaska Order

The Alaska support order made Wall's entitlement to support dependent on his taking physical custody of the children. But Wall never took physical custody of the children. In fact, Stinson has retained physical custody of the children for over ten years. In 1993, the Alaska Child Support Enforcement Division (CSED) registered the Oregon order in Alaska—the first step toward judicial enforcement. Wall objected to the registration and moved that it be vacated. He argued, among other things, that Oregon's support order was unenforceable because, in 1988, Alaska had determined that Oregon lacked jurisdiction under the PKPA. CSED did not oppose Wall's objection; the superior court vacated the registration, noting CSED's non-opposition.

### D. 1996 Alaska Court Order Clarifying the 1989 Order

CSED nevertheless enforced the Oregon child support order administratively. Wall, through counsel, objected to the administrative enforcement. In response to Wall's objection, CSED, in 1996, requested that the superior court clarify its 1989 support and custody order, which had declared the Oregon judgment unenforceable under the PKPA as to the subject of custody. Although CSED conceded that the Oregon custody order was unenforceable under the PKPA as to the subject of custody, it argued that the Full Faith and Credit for Child Support Orders Act (FFCCSOA)[2] required enforcement of the Oregon judgment's child support provisions.

The superior court agreed with CSED that jurisdiction for child custody and juris-

1. 28 U.S.C. § 1738A(a) (1994).

2. 28 U.S.C. § 1738B (1994).

diction for child support are distinct. It concluded that, although Oregon lacked jurisdiction under the PKPA to make a child custody determination—the precise issue previously litigated in the 1988 Alaska proceeding—Oregon did have jurisdiction under the FFCCSOA to enter a support order. The court thus found the Oregon support order enforceable. Wall appeals.

## II. DISCUSSION

On appeal, Wall raises two narrow issues. First, he argues that CSED is barred from relitigating the validity of the Oregon child support order. He contends that the 1993 Alaska order vacating CSED's registration of the Oregon order amounts to a final adjudication establishing that the Oregon support order is unenforceable.[3] Second, he collaterally attacks the Oregon order, maintaining that it is not entitled to full faith and credit because Oregon lacked personal jurisdiction over him and subject matter jurisdiction over the issue of child support.

For the reasons below, we hold that the 1993 Alaska order did not finally adjudicate the validity of Oregon's order and that Wall may not today collaterally attack Oregon's order for want of jurisdiction.

### A. Standard of Review

■■■ Whether Oregon's child support order is entitled to enforcement under the FFCCSOA[4] turns on the interpretation of federal and state law. Statutory interpretation is a question of law to which we apply our independent judgment.[5] Normally when considering questions of law, we are "not bound by the lower court's decision" and will "adopt the rule of law that is most persuasive in light of precedent, reason, and policy."[6] Whether collateral estoppel applies in a par-

ticular situation is also a legal question subject to our independent consideration.[7]

### B. The 1993 Alaska Superior Court Order Vacating Registration of the Oregon Support Order Did Not Finally Adjudicate the Validity of Oregon's Order.

■■■ Wall argues that the 1993 Alaska court order vacating the registration of the Oregon support order determined the invalidity of that order and that, consequently, res judicata or collateral estoppel precludes CSED from any further attempt to enforce the support order.

CSED counters that the 1993 order vacating its registration of the Oregon support order did not rule on the order's validity. According to CSED, the order vacating registration was entered only because CSED did not oppose Wall's motion to vacate. CSED explains that, because it believed that it was entitled to enforce the Oregon order without court approval through administrative action, it had no incentive to oppose Wall's motion to vacate the registration, which would have been necessary only if CSED pursued judicial enforcement. CSED maintains that, under these circumstances, collateral estoppel is inapplicable because the validity of the Oregon order was never actually litigated or necessarily decided. CSED further maintains that it would be unfair and inappropriate to preclude relitigation of the matter, since it would not be in the best interests of the children to do so.

In contending that CSED is barred from relitigating the validity of Oregon's support order, Wall mentions both res judicata and collateral estoppel. But he appears to concede that res judicata is inapplicable and devotes his entire argument to collateral estoppel. Thus, we need only consider whether collateral estoppel applies.[8]

---

3. Wall only addresses the effect of Alaska's 1993 order vacating CSED's registration of the Oregon judgment. He does not argue that Alaska's 1988 custody and support order established the invalidity of the Oregon judgment. Accordingly, we do not address that potential issue.

4. 28 U.S.C. § 1738B (1994).

5. See Borg–Warner Corp. v. Avco Corp. (Lycoming Div.), 850 P.2d 628, 631 n. 8 (Alaska 1993).

6. Guin v. Ha, 591 P.2d 1281, 1284 n. 6 (Alaska 1979).

7. See State v. United Cook Inlet Drift Ass'n, 895 P.2d 947, 950 (Alaska 1995).

8. See Adamson v. University of Alaska, 819 P.2d 886, 889 n. 3 (Alaska 1991) (holding that "where a point is given only a cursory statement in the argument portion of a brief, the point will not be

The doctrine of collateral estoppel "bars relitigation, even in an action on a different claim, of all 'issues of fact or law that were actually litigated and necessarily decided' in [a] prior proceeding." [9] Collateral estoppel precludes relitigating an issue in a second action only if the issue was actually and finally decided in the first action:

1) The plea of collateral estoppel must be asserted against a party or one in privity with a party to the first action;

2) [t]he issue to be precluded from relitigation by operation of the doctrine must be identical to that decided in the first action;

3) [t]he issue in the first action must have been resolved by a final judgment on the merits.[10]

The weight of authority supports the conclusion that default judgments should not be given any issue-preclusive effect, because they do not entail a full and actual litigation of the underlying factual issues.[11] We agree.

Wall relies on *Rapoport v. Tesoro Alaska Petroleum Company* [12] for the proposition that a default judgment can support collateral estoppel. But *Rapoport* is distinguishable. In that case, two related superior court cases were pending; Rapoport defaulted on both.[13] He moved to set aside the default judgment in the first case under Alaska Civil Rule 60(b), arguing excusable neglect.[14] He essentially contended that he had been too sick to realize that he was being sued.[15] The court denied his Rule 60(b) motion.[16] Rapoport then moved to set aside the default judgment in the second case, raising the same excusable neglect argument.[17] The second court held that collateral estoppel barred him from litigating the issue of excusable neglect that he had already raised and lost in his first Rule 60(b) motion.[18] Thus, it was not the underlying default judgment that supported collateral estoppel in *Rapoport.* Rather, collateral estoppel was found to apply because Rapoport's claims of excusable neglect actually were litigated and necessarily decided in his first Rule 60(b) motion.

Because the 1993 order vacating CSED's registration was based on CSED's failure to oppose Wall's motion to vacate, the order was, in effect, entered by default and did not actually decide the validity of the Oregon order. Wall has failed to demonstrate that collateral estoppel applies as a result of the 1993 order.

### C. Oregon's Order Is Not Unenforceable for Want of Jurisdiction.

#### 1. Personal jurisdiction

Wall argues that the Oregon order is unenforceable because the Oregon court lacked personal jurisdiction over him. Wall's argument is without merit. Over fifty years ago, the United States Supreme Court discussed whether want of personal jurisdiction

---

considered on appeal"); *State v. O'Neill Investigations, Inc.,* 609 P.2d 520, 528 (Alaska 1980) (concluding that the "[f]ailure to argue a point constitutes an abandonment of it"); *L.E. Spitzer Co. v. Barron,* 581 P.2d 213, 218 (Alaska 1978) (deeming an argument waived when party gave only cursory treatment and cited no authority); *Wernberg v. Matanuska Elec. Ass'n,* 494 P.2d 790, 794 (Alaska 1972) (holding that although argument had been raised, since the issue had only been given cursory treatment and no citation to authority was provided, the issue was waived).

9. *Campion v. State, Dep't of Community & Reg'l Affairs, Housing Assistance Div.,* 876 P.2d 1096, 1098 (Alaska 1994) (quoting *Americana Fabrics v. L & L Textiles,* 754 F.2d 1524, 1529 (9th Cir.1985)).

10. *Rapoport v. Tesoro Alaska Petroleum Co.,* 794 P.2d 949, 951 (Alaska 1990) (quoting *McKean v. Municipality of Anchorage,* 783 P.2d 1169, 1171 (Alaska 1989)).

11. *See, e.g.,* Jack H. Friedenthal et al., *Civil Procedure* § 14.11 n. 5 (2d ed.1993); *see also* Restatement (Second) of Judgments § 27 cmt. e (1982) ("In the case of a judgment entered by ... default, none of the issues is actually litigated.").

12. 794 P.2d 949 (Alaska 1990).

13. *See id.* at 950–51.

14. *See id.* at 951.

15. *See id.*

16. *See id.*

17. *See id.*

18. *See id.*

may be used to collaterally attack a judgment. It said:

> Public policy dictates that there be an end of litigation; that those who have contested an issue shall be bound by the result of the contest; and that matters once tried shall be considered forever settled as between the parties. We see no reason why this doctrine should not apply in every case where one voluntarily appears, presents his case and is fully heard, and why he should not, in the absence of fraud, be thereafter concluded by the judgment of the tribunal to which he has submitted his cause.[19]

Although that discussion involved federal res judicata law, the Supreme Court later declared that this rule also applies to foreign judgments being enforced under full faith and credit.[20]

■ Wall vigorously litigated personal jurisdiction in the Oregon court, and the Oregon court decided against him. Even if the judgment is based on legal error, it is entitled to full faith and credit. The remedy for legal error is appeal, not collateral attack.[21] Wall began but failed to prosecute an appeal in Oregon. He is not entitled to relitigate the issue here.

### 2. Subject matter jurisdiction

■ A valid final judgment in one state is ordinarily entitled to full faith and credit in its sister states.[22] The FFCCSOA expressly requires that a child support order be enforced if it complies with the FFCCSOA's requirements.[23] An order complies with the FFCCSOA if (1) the court has subject matter jurisdiction under its own laws, (2) the court has personal jurisdiction over the parties, and (3) the parties are afforded notice and opportunity to be heard.[24] CSED argues, and Wall does not contest, that Wall was afforded ample notice and opportunity to be heard. The question of personal jurisdiction was discussed above. The remaining question is whether Oregon had subject matter jurisdiction under its own laws.

■ Oregon determined that it had jurisdiction to decide child custody and support; accordingly, it entered a divorce decree awarding Stinson custody and ordering Wall to pay child support. Wall does not contest that Oregon actually litigated and necessarily decided this issue. He implicitly argues that because Alaska determined that Oregon lacked jurisdiction over custody issues, the Oregon support order is wrong and therefore unenforceable. But just as Oregon's determination that it had personal jurisdiction over Wall is entitled to preclusive effect, so its determination that it had subject matter jurisdiction over the child support issues is also binding.

■ While it is ordinarily true that only a valid final judgment is entitled to full faith and credit, "full faith and credit means that a state must accord the judgment of a court of another state the same credit that it is entitled to in the courts of that state."[25] Section 12 of the Restatement lists three situations in which a judgment may be avoided for lack of subject matter jurisdiction: (1) if the subject matter was plainly beyond the authority of the court, (2) if allowing the judgment to stand would substantially infringe on the authority of another tribunal, or (3) if the judgment was rendered by a court lacking the capability to determine its own jurisdiction.[26]

19.  Baldwin v. Iowa State Traveling Men's Ass'n, 283 U.S. 522, 525–26, 51 S.Ct. 517, 75 L.Ed. 1244 (1931).

20.  See Sherrer v. Sherrer, 334 U.S. 343, 350, 68 S.Ct. 1087, 92 L.Ed. 1429 (1948); Clawson v. Prouty, 215 Or. 244, 333 P.2d 1104, 1107 (Or. 1959) (adopting the Sherrer and Baldwin rule). See also Restatement (Second) of Conflict of Laws § 96 cmt. b (1971) (reasoning that where the defendant chooses to litigate personal jurisdiction in the forum, rather than default, he gives the court jurisdiction to decide the issue).

21.  See Fauntleroy v. Lum, 210 U.S. 230, 237, 28 S.Ct. 641, 52 L.Ed. 1039 (1908).

22.  See U.S. Const. art. IV, § 1.

23.  See 28 U.S.C. § 1738B(a) (1994).

24.  See 28 U.S.C. § 1738B(c) (1994).

25.  Morphet v. Morphet, 263 Or. 311, 502 P.2d 255, 260 (Or.1972).

26.  See Restatement (Second) of Judgments § 12 (1982).

In this case, Wall argues that because the Oregon court did not have jurisdiction to issue a custody order, it did not have jurisdiction to issue a support order. But CSED contends that the Oregon court did have subject matter jurisdiction over the issue of support because it had jurisdiction over Stinson's dissolution action.[27] We agree, concluding that the exceptions to section 12 of the Restatement do not apply to the court's support order.

Under Oregon Revised Statute (ORS) § 107.095(1) (1988), Oregon courts have express authority to issue a support order as part of the dissolution process:

> After the commencement of a suit for marital annulment, dissolution or separation and *until a decree therein,* the court may provide as follows:
>
> . . . .
>
> (b) For the care, custody, *support* and maintenance, by one party or jointly, of the minor children as described in ORS 107.105(1)(a) and for the visitation rights as described in ORS 107.105(b) of the parent not having custody of such children.[28]

ORS § 107.105(1) further provides:

> Whenever the court grants a decree of marital annulment, dissolution or separation, it has power further to decree as follows:
>
> . . . .
>
> (c) For the recovery from the party not allowed the care and custody of such children, or from either party or both parties if joint custody is decreed, such amount of money, in gross or in instalments, or both,

as constitutes just and proper contribution toward the support and welfare of such children. . . .

In this case, when both the interim and final support orders were entered, neither the Oregon court nor the Alaska court had issued a custody order. Nor had Wall taken actual physical custody of the children. Thus, under ORS § 107.095(1)(b) and ORS § 107.105(1)(c), the Oregon court had authority to order Wall to pay child support.

Nothing in Oregon's dissolution law conditions a court's authority to order child support on that court's jurisdiction over custody.[29] And the Full Faith and Credit Act merely requires the court to have jurisdiction over "the matter"[30]—in this case, the separation and dissolution actions. Thus, the Oregon court's support order was not "plainly beyond [that] court's jurisdiction."[31]

Nor did the Oregon support order "substantially infringe the authority of [the Alaska superior court]."[32] Wall had a duty to support his children under the laws of both states. Since Alaska's support order was conditioned on his assuming actual custody, which never occurred, there was no actual conflict between the Alaska and Oregon support orders.

Finally, the Oregon court undisputedly had the "capability to make an adequately informed determination of a question concerning its own jurisdiction[.]"[33] Since it actually did determine its own jurisdiction, "there is no reason why [that] determination of the issue should not thereafter be conclusive under the usual rules of issue preclusion."[34]

---

27. CSED does not also try to defend the subject matter jurisdiction of the Oregon court as to custody. Accordingly, we assume for purposes of this opinion that Oregon lacked subject matter jurisdiction over that issue.

28. (Emphasis added.)

29. *See* Or.Rev.Stat. § 107.105(1)(c).

30. 28 U.S.C. § 1738B(c) (1994). The section provides:

> (c) Requirements of child support orders.—A child support order made is made consistently with this section if—
>
> (1) a court that makes the order, pursuant to the laws of the State in which the court is located—

> (A) has subject matter jurisdiction to hear the matter and enter such an order; and
> (B) has personal jurisdiction over the contestants; and
> (2) reasonable notice and opportunity to be heard is given to the contestants.

31. Restatement (Second) of Judgments § 12(1) (1982).

32. *Id.* § 12(2).

33. *Id.* § 12(3).

34. *Id.* § 12 cmt. c; *see also Stoll v. Gottlieb,* 305 U.S. 165, 172, 59 S.Ct. 134, 83 L.Ed. 104 (1938) (concluding that a determination of subject mat-

In Oregon,

[e]very court confronted with a law suit of any kind is under both the necessity and the duty of determining whether or not it has jurisdiction to entertain the suit, and it necessarily has jurisdiction to make this determination. If it determines erroneously that it has jurisdiction, its own erroneous determination does not give it any true jurisdiction of the case as a whole, and its judgment is in general void and therefore subject to collateral attack, *but in accordance with principles which also form the basis for the familiar doctrine of res judicata the judgment may, after it becomes final, be binding upon the parties to the suit although not upon others, and the rights of parties may therefore be limited to ... direct attack. The theory of the law on this subject is fully set forth in the Restatement: Judgments, §§ 4, 7, 8, 9, 10, 11, 12, 33, 74, 93,* including the comments on each section.[35]

In the present case, the Oregon court had the authority and duty to examine its jurisdiction. It determined that it had jurisdiction. Wall appealed the court's decision but then abandoned his appeal, allowing the decision to become final. Because Oregon's determination that it had subject matter jurisdiction is itself entitled to full faith and credit, we decline to reexamine the issue.

## III. CONCLUSION

Because Wall has failed to establish that the Oregon support order was determined to be invalid in 1993 or that it should be found invalid today, we AFFIRM the superior court's order finding Oregon's child support order administratively enforceable under the FFCCSOA.

ter jurisdiction in a contested action was res judicata and precluded reexamination); Restatement (Second) of Conflict of Laws §§ 97, 105–06 (1971) (stating that collateral attack for want of personal or subject matter jurisdiction is limited to situations in which the issue was not actually litigated in the first tribunal).

35. *Clawson v. Prouty,* 215 Or. 244, 333 P.2d 1104, 1107 (1959) (quoting *Old Colony Trust Co. v. Porter,* 324 Mass. 581, 88 N.E.2d 135, 139 (1949)) (emphasis added).